IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


EVERETT W. ROGERS, *et al.*,

          Plaintiffs,

    vs.                          Civil Action 2:03-CV-1192
                                     Judge Watson
                                     Magistrate Judge King

FRED ISLER, *et al.*,

          Defendants.


OPINION AND ORDER
and
REPORT AND RECOMMENDATION


       The original complaint in this action, filed in state court and subsequently removed to this Court, asserted securities fraud claims under federal and state law. Plaintiffs claimed that defendants violated §§10(b) and 20(a) of the 1934 Securities Exchange Act, 15 U.S.C. §§78j, 78t, as well as the securities laws of Ohio, Florida and Missouri, in connection with a loan secured by cattle. Defendants filed a motion for judgment on the pleadings, arguing that the claims were barred by the statute of limitations; plaintiffs filed a motion for leave to amend the complaint to assert common law claims of fraud, breach of fiduciary duty and negligent supervision as against all the original defendants and two proposed new defendants. Plaintiffs did not, however, submit the actual proposed amended complaint for review. On September 28, 2004, Judge Graham, to whom the case was then assigned, granted defendants' motion for judgment on the pleadings but denied plaintiffs' motion for leave to amend the complaint on the ground that plaintiffs had not tendered the proposed amended complaint. *Opinion and Order*, Doc. No. 27. That denial, however, was without prejudice to refiling upon submission of the

proposed amended complaint. *Id.*, at p. 7. Plaintiffs have now filed a second motion for leave to amend the complaint and to join new parties, and have tendered the proposed amended complaint. Doc. No. 31.

The proposed amended complaint reasserts the statutory securities claims previously determined to be time-barred, and also asserts new common law claims of fraud, breach of fiduciary duty and negligent supervision against the current defendants and two proposed new defendants. Defendants oppose the motion, arguing that even the proposed new common law claims are time-barred because they, too, are governed by the Ohio statute of limitations applicable to securities claims.

Rule 15 governs amended and supplemental pleadings and provides, in relevant part:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served.... Otherwise a party may amend the party's pleading only by leave of court...and leave shall be freely given when justice so requires.

Fed. R. Civ. P. 15(a). "The decision as to whether justice requires the amendment is committed to the district court's sound discretion." *Moore v. City of Paducah,* 790 F.2d 557, 559 (6th Cir. 1986). A court may refuse to allow the amendment if it finds

> undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment....

*Foman v. Davis,* 371 U.S. 178, 182 (1962); *Robinson v. Michigan Consol. Gas Co.,* 918 F.2d 579, 591 (6th Cir. 1990). In the absence of any of these factors, plaintiffs should be afforded the opportunity to amend the complaint. *See Foman,* 371 U.S. at 182. Moreover, all persons may be joined as defendants

> if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising

> out of the same transaction, occurrence, or series of
> transactions or occurrences and if any question of law or fact
> common to all defendants will arise in the action.

F.R.Civ.P. 20(a). Joinder of parties under Rule 20 is to be viewed liberally "in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." *Brown v. Worthington Steel, Inc.*, 211 F.R.D. 320, 324 (S.D.Ohio 2002).

Defendants argue that to allow the proposed amendment would be to engage in an exercise in futility. "If a proposed amendment would be vulnerable to a motion to dismiss or to strike, 'it would be an idle move for the Court to allow an amendment over the objection of the opposing party who could simply make a formal motion to dismiss or strike after leave to amend is granted.'" *Prebble v. Hinson,* 825 F. Supp. 185, 186 (S.D. Ohio 1993) (citations omitted); *see also Thiokol Corp. v. Dep't of Treasury, State of Michigan, Revenue Div.,* 987 F.2d 376, 382-83 (6th Cir. 1993); *Marx v. Centran Corp* ., 747 F.2d 1536, 1551 (6th Cir. 1984). Defendants therefore ask that the motion for leave to amend be denied and that, consistent with the *Opinion and Order* of September 28, 2004, the action be dismissed with prejudice.

Counts I through VI of the proposed amended complaint assert, once again, the statutory securities law claims asserted in the original complaint and which have previously been determined by Judge Graham to be time-barred.[1] Plaintiffs ask that the Court's earlier dismissal of these claims be reconsidered in light of the new facts alleged in the proposed amended complaint.

In his September 28, 2004 *Opinion and Order,* Judge Graham reasoned that the federal securities claims asserted in the original

---

[1]The single exception is the deletion from the proposed amended complaint of a claim under the securities laws of the State of Florida.

3

complaint had not been asserted within the time periods established in 28 U.S.C. §1658(b), *i.e.*, the earlier of 2 years after the discovery of the facts constituting the securities violation or 5 years after such violation.  Plaintiffs' Ohio securities law claims should have been, but were not, asserted within 2 years after they were put on notice of the alleged unlawful acts or misrepresentations underlying their claims, as provided in O.R.C. §1707.43(b), and their Missouri securities laws claims should have been instituted within two years after discovering the facts underlying those claims.  V.A.M.S. §409.5-509(j)(2).

In the case presently before this Court, Judge Graham determined that plaintiffs had actual or constructive notice of the facts underlying their statutory securities claims beyond the periods established by the applicable statutes of limitations:

> Plaintiffs had already actually discovered the alleged fraud at the time they filed their complaint in Missouri. With reasonable diligence, plaintiffs could have discovered the involvement of the other officers and directors and filed this action within the two-year period. Plaintiffs here even had the benefit of the discovery process in the Missouri action to gather additional information concerning the details of the fraud. Since plaintiffs failed to file the instant action within two years of their discovery of the fraud, their federal claims are barred by the statute of limitations.

> \*       \*       \*

> The Ohio two-year limitations period commenced with the filing of the Missouri complaint, and their Ohio law claims are barred.

> \*       \*       \*

> This court agrees with defendants' argument that the facts alleged in the Missouri complaint show that plaintiffs had discovered the facts constituting the violation no later than October 10, 2001. The complaint in the instant case was filed beyond the two-year limitations period, and plaintiffs' claim under §409.5-501 is also barred.

*Opinion and Order*, at pp. 15 - 16, 17, 20, Doc. No. 27.  The fact that, as plaintiffs now contend, they learned yet more information during the

4

course of discovery in the Missouri litigation does not persuade this Court that the earlier dismissal of these claims was erroneous.

To the extent that plaintiffs' motion seeks to assert statutory securities laws claims against new parties, those claims are also time-barred. The proposed new parties defendant are identified in the proposed amended complaint as vice-presidents of UPI. *Proposed Amended Complaint*, ¶¶14, 15. As Judge Graham reasoned in his *Opinion and Order* of September 28, 2004, "the scope and circumstances of the alleged fraud, which allegedly resulted in a loss to the plaintiffs of over four million dollars, were such as to place on plaintiffs a duty to inquire into the possible involvement of other officers or directors of UPI." *Opinion and Order*, at p. 14, Doc. No. 27. This Court concludes that, even as to the proposed new defendants, the statutory securities law claims sought to be asserted by plaintiffs are untimely.

The proposed amended complaint also seeks to assert common law claims for fraud, breach of fiduciary duty and negligent supervision. Defendants contend that these claims are likewise time-barred.

Although the parties agree that it is Ohio law that provides the statute of limitations applicable to plaintiffs' proposed common law claims, *Plaintiffs' Reply*, at p. 3; *Defendants' Memorandum contra*, at p. 17, the parties disagree as to the statute actually applicable to these claims. Plaintiffs take the position that it is the four year statute governing tort claims, O.R.C. §2305.09;[2] defendants contend that, because

---

[2]"An action for any of the following causes shall be brought within four years after the cause thereof accrued:

               *                *                *

(C) For relief on the ground of fraud:
(D) For an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 1304.35, 2305.10 to 2305.12, and 2305.14 of the Revised Code. . . ." O.R.C. §2305.09.

5

securities are the "linchpins" of these claims, *Defendants' Memorandum contra*, at p. 17, Ohio's two-year statute governing claims arising out of an alleged violation of Ohio's blue sky laws, O.R.C. §1707.43(B), [3] applies.

The Supreme Court of Ohio has provided guidance to courts called upon to determine which of two statutes of limitations properly applies to a particular dispute: "[C]ourts must look to the actual nature or subject matter of the case, rather than to the form in which the action is pleaded. The grounds for bringing the action are the determinative factors[;] the form is immaterial." *Lawyers Cooperative Publishing Co. V. Meuthing,* 65 Ohio St. 3d 273, 277 (1992). "[W]e do not agree that the two year limitation period in § 1707.43 was intended to apply to all cases of securities law fraud, including those based solely upon the common law of fraud. . . . It applies to cases where the plaintiff claims his recovery is 'based upon' or 'aris[es] out of' a violation of the blue sky provisions[.]" *Nickels v. Koehler Mgt. Corp.,* 541 F.2d 611, 616, *overruled on other grounds, Ockerman v. May Zima Co.,* 27 F.3d 1151 (6th Cir. 1994).

Ohio's blue sky law, O.R.C. Chapter 1707,

imposes liability without fault if the following elements are proved: there must be a "sale"; of a "security"; in violation of any of the noted

---

[3]No action for the recovery of the purchase price as provided for in this section, and no other action for any recovery based upon or arising out of a sale or contract for sale made in violation of Chapter 1707. of the Revised Code, shall be brought more than two years after the plaintiff knew, or had reason to know, of the facts by reason of which the actions of the person or director were unlawful, or more than five years from the date of such sale or contract for sale, whichever is the shorter period.

O.R.C. §1707.43(B).

> provisions of the securities chapter, which
> violation materially affects the protection
> contemplated by the violated provision.

*Martin v. Steubner,* 486 F.Supp. 88, 97 (S.D. Ohio 1979), *aff'd*, 652 F.2d

652 (6th Cir. 1981). Ohio courts generally hold that, if a claim "arises

from sales of or contracts relating to securities," the two-year statute

of limitations established in O.R.C. §1707.43(B) applies even if the

claim is characterized by the plaintiff as one arising under the common

law of Ohio. *Wuliger v. Anstaett* , 363 F.Supp.2d 917, 934 (N.D. Ohio

2005)[and cases cited therein]. *But see Ferrito v. Alejandro,* 139 Ohio

App. 3d 363 (Summit Cy. Ct. App. 2000).

In their *Reply Memorandum*, Doc. No. 43, plaintiffs

characterize the common law claims sought to be asserted in the amended

complaint as "stem[ming] from affirmative misrepresentations and knowing

omissions made by Defendants and their agents in order to convince the

Rogers to give money to Defendants and their agents that Defendants and

their agents used for purposes other than the purchase of cattle for the

Rogers." *Id.*, at p. 8. However, the proposed amended complaint

summarizes the transactions between and among the parties somewhat

differently:

> ¶53. On or about December 14, 2000, at the Rogers'
> home in Lake City, Florida, Plaintiffs and PCC
> executed a loan agreement, promissory note and
> security agreement ("Funding Documents") for the
> purposes of providing Plaintiffs money to purchase
> cattle, custom feed and to pay for management and
> feeding services for the cattle purchase. The
> Funding Documents required the cattle purchased
> with the loan proceeds to serve as collateral for
> the loan. Without the Funding Documents,
> Plaintiffs would not have purchased the cattle and
> there would have been no Funding Documents but for
> the Plaintiffs' purchase of the cattle. . . .
>
> ¶54. Pursuant to the Funding Documents:
> (a) PCC agreed to extend a line of credit to
> Circle R of up to Five Million Two Hundred Thousand

7

Dollars ($5,200,000)("Invested Funds");

    (b) The Invested Funds would be disbursed by PC as follows:

        (i) from time to time, PCC would disburse a portion of the Invested Funds directly to United Livestock Services or Professional Business Services;

        (ii) each disbursement would be charged against Circle R's account with PCC; and

        (iii) in exchange for each transfer, (1) United Livestock Services, through Professional Business Services, would deliver to Circle R title to certain specified feeder cattle and (2) one or more affiliates of PCC and UPI (including without limitation Young, United Livestock Services and/or Professional Business Services), would provide management and feeding with respect to the feeder cattle delivered by United Livestock Services or Professional Business Services.

¶55. Plaintiffs purchased 4,992 head of cattle from United Livestock Services on or about December 16, 2000, for the price of Two Million, Five Hundred Eighty-three Thousand, Two Hundred Twenty-five and 50/100 Dollars ($2,583,225.50). Thirty percent (30%) of the purchase price was paid in cash by Circle R and the remainder financed through PCC pursuant to the Funding Documents.

¶56. Plaintiffs paid One Million, One Hundred Ninety-nine Thousand, Five Hundred Eighty-eight and 92/100 ($1,199,558.92) to Professional Business Services for feed and other expenses related to this cattle. One hundred percent (100%) of these costs were financed through PCC pursuant to the Funding Documents.

¶57. UPI and its wholly-owned subsidiary and alter ego PCC controlled the performance of United Livestock Services, their employee and agent Young, and Professional Business Services under the Funding Documents, including without limitation the following:

    (a) UPI and its wholly-owned subsidiary and alter ego PCC substantially influenced and/or determined the amount and timing of each disbursement of invested Funds to United Livestock Services and Professional Business Services;

    (b) PCC agreed in the Funding Documents that the value of the cattle would always exceed the Invested Funds by at least 20%;

    (c) PCC agreed in the Funding Documents to cause Professional Business Services to subordinate to PCC its rights in the cattle and feed to be delivered to Circle R.

8

¶58. Young, as the employee and/or agent of PCC, UPI, and United Livestock Services, converted Circle R's property by usurping the Invested Funds, purporting to sell to Circle R cattle that did not exist or were owned by other investors, purporting to feed cattle on behalf of Circle R that did not exist or were owned by other investors, and by selling cattle owned by Circle R to others without Circle R's permission and without paying Circle R the proceeds from those sales or applying those proceeds to Circle R's benefit.

¶59. **The Funding Documents and the transaction contemplated therein constituted the offer and sale by PCC and United Livestock Services, both of which in turn are alter egos of UPI, of "Securities."**

*Proposed Amended Complaint,* attached to Doc. No. 31, at pp. 8-10.

Plaintiffs' proposed common law fraud claim, Count VII of the *Proposed Amended Complaint*, alleges in pertinent part as follows:

Defendants served as officers and/or directors of PCC, **during the offering and sale of the Securities** to Circle R, were privy to and/or participated in the creation of the documents creating the investments, and were aware of UPI's and/or PCC's dissemination of information to the public, and in particular to Plaintiffs, which they knew or recklessly disregarded was materially false and misleading.

*Id.,* ¶156 [emphasis added]. The proposed common law claim for breach of fiduciary duty, Count VIII, is based on the following reasoning:

**[B]y virtue of the Plaintiffs' purchase of Securities . . , Plaintiffs stand in a special relationship with Defendants . . .** under which these Defendants have fiduciary duties to Plaintiffs to act in Plaintiffs' best interest, to exercise a duty of loyalty and trust, to disclose information to Plaintiffs and to otherwise affirmatively act for the protection of the Plaintiffs and the Securities in Plaintiffs' dealings with UPI, PCC, Professional Business Services, United Livestock Services, Young and enterprises owned, operated and controlled by Young.

\*     \*     \*

**Defendants knew or should have known . . . that the Plaintiffs were placing a special trust, confidence and control in Defendants and were relying on**

9

> **Defendants prior to and after the purchase of the Securities** to protect their Securities and to notify the Plaintiffs of any peril to these Securities when Defendants became aware of such peril.

*Id.*, ¶¶176,178 [emphasis added]. Finally, plaintiffs' proposed negligent supervision claim, Count IX, can be summarized in the following:

> As a direct and proximate result of Young's, Little's and/or Clark's incompetence, Plaintiffs suffered damages in that the cattle that were supposed to be purchased with the loan proceeds are non-existent, the Securities and/or the loan proceeds were converted, the Securities were sold to multiple investors, the Securities are generally worthless and Plaintiffs were unable to take action to protect the Securities and prevent their losses, . . .

*Id.,* ¶200.

This Court concludes that the proposed common law claims sought to be asserted in the proposed amended complaint arise from sales of or contracts relating to securities and are therefore governed by the two-year statute of limitations established in O.R.C. §1707.43(B). Because these claims are untimely, leave to assert them would be futile. Plaintiffs' motion for leave to amend, Doc. No. 31, is therefore **DENIED**.

With the denial of the motion for leave to amend, it is **RECOMMENDED** that the action be **DISMISSED.**

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within ten (10) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed

within ten (10) days after being served with a copy thereof. F.R. Civ.
P. 72(b).

    The parties are specifically advised that failure to object to
the *Report and Recommendation* will result in a waiver of the right to *de
novo* review by the District Judge and of the right to appeal the decision
of the District Court adopting the *Report and Recommendation. See Thomas
v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers,
Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,*
638 F.2d 947 (6th Cir. 1981).


June 17, 2005                              *s/Norah McCann King*
                                        Norah M[c]Cann King
                                   United States Magistrate Judge

11